UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                             :

LINA ASSAF and GEORGE ASSAF,

                        Plaintiffs,

                                  20 Civ. 9460 (JPC)
         -v-

                                  OPINION AND ORDER

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY and UNITED AIRLINES INC.,

                       Defendants.

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Lina ("Lina") and George Assaf seek to hold Defendants the Port Authority of New York and New Jersey (the "Port Authority") and United Airlines Inc. ("United") liable in tort for an accident that occurred in New Jersey. United filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, the Court grants United's motion.

## I. Background[1]

      On September 4, 2019, while she was disembarking a United flight from Athens, Greece to Newark, New Jersey, Lina fell on the jetway at Terminal B, Gate 56 of Newark Liberty

---

[1] The facts in this section are drawn primarily from Plaintiffs' Complaint and are assumed true for purposes of this Opinion and Order. Dkt. 1, Exh. 1 ("Compl."). In addition, "because a motion to dismiss for lack of personal jurisdiction requires the resolution of factual issues outside the pleadings, the Court considers other relevant submissions from the parties at this stage." *Ahmed v. Purcell*, No. 14 Civ. 7491 (KPF), 2016 WL 1064610, at *1 n.1 (S.D.N.Y. Mar. 14, 2016) (internal quotation marks omitted); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) ("[W]e have made clear that a district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment."). Specifically, the Court considers the declaration from Robert P. Sharron, attorney for Plaintiffs, filed in opposition to United's motion

International Airport. Compl. ¶ 10; Dkt. 10 at 1. In short, Plaintiffs contend that Lina fell because Defendants were negligent in maintaining the jetway. *See, e.g.*, Compl. ¶¶ 13, 35.

Plaintiffs are New York residents. *Id.* ¶ 1. The Complaint alleges that United is a "Foreign Corporation, duly authorized to transact business in the States of New York and New Jersey," *id.* ¶ 3, and that the Port Authority "is a body, corporate and politic, created by the compact between the states of New York and New Jersey with consent of the Congress of the United States," *id.* ¶ 2.[2]

On September 30, 2020, Plaintiffs filed suit in the Supreme Court of the State of New York, Bronx County. *Id.* Plaintiffs bring claims for negligence against both the Port Authority and United, and George Assaf brings a claim for loss of spousal support and consortium from his wife. Plaintiffs seek damages for "serious personal injuries, pain and suffering, loss of enjoyment of life, medical expenses, future lost wages and benefits and all other recoverable items under New York State Law." *Id.* at p. 12-13.

On November 11, 2020, United removed the case to this Court, pursuant to 28 U.S.C § 1441. Dkt. 1 at p. 1. The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, on the grounds that the "international carriage of persons, baggage or cargo performed by aircraft for reward" is governed by the Montreal Convention, an international treaty to which the United States was, at all relevant times, a signatory. *Id.* ¶¶ 6-12; *see* Dkt. 17 ("Opposition") at 1; *Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 9 (2d Cir. 1990) ("Article

---

to dismiss, Dkt. 16, and certain admissions from Plaintiffs not specifically alleged in the Complaint, Dkt. 10.

[2] United responds that it is incorporated in Delaware and maintains its principal place of business in Illinois, and cites a number of cases supporting this proposition. Dkt. 15 ("Motion") at 2, 7. While the Court assumes Plaintiffs' allegations are true for purposes of United's Rule 12(b)(2) motion, *see Dorchester Fin. Sec., Inc.*, 722 F.3d at 85, any disagreement as to United's citizenship is not material to this Opinion and Order.

17 [of the Montreal Convention] imposes liability on airlines for accidental injuries that occur 'in the course of any of the operations of embarking or disembarking.'"); *Mullaney v. Delta Air Lines, Inc.*, No. 08 Civ. 7324 (CM), 2009 WL 1584899, at *1 (S.D.N.Y. June 3, 2009) ("Due to the preemptive nature of the Convention, claims that fall within its parameters cannot be the subject of lawsuits pursuing other theories of recovery, state or federal.").

On December 23, 2020, United filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that the Court does not have general or specific jurisdiction over it. Dkts. 13, 14; Motion. Plaintiffs filed an opposition to the motion to dismiss on January 13, 2021, arguing that the Court has specific jurisdiction over United because United transacts business in New York, but that if the Court concludes that it does not have jurisdiction, it should *sua sponte* transfer this case to New Jersey. Dkt. 16; Opposition. United filed a reply in further support of its motion on January 20, 2021. Dkt. 20 ("Reply").

## II. Legal Standard

A court reviewing a motion to dismiss for lack of personal jurisdiction first considers whether there is "a statutory basis for exercising personal jurisdiction," *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013), based on "the law of the forum in which the court sits," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). If so, the court must determine whether the exercise of jurisdiction comports with due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir.), *certified question accepted*, 15 N.Y.3d 744 (2010), *and certified question answered*, 16

N.Y.3d 295 (2011).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  In other words, a plaintiff bears the burden of raising facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé*, 616 F.3d at 163 (internal quotation marks and brackets omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "[C]ourts have 'considerable procedural leeway'" while reviewing a motion to dismiss for lack of personal jurisdiction, which includes discretion to "permit discovery in aid of the motion" or authorize "an evidentiary hearing on the merits of the motion." *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)).

### III.  Discussion

**A. New York's Long-Arm Statute[3]**

Plaintiffs argue that the Court has personal jurisdiction over United pursuant to section 302(a) of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), which provides that "a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R § 302(a)(1).  There are two components to the statute: (1) "[t]he defendant must have transacted business within the state" and (2) "the claim asserted must arise

---

[3] In response to United's pre-motion letter seeking leave to file its motion to dismiss, Dkt. 5, Plaintiffs argued that the Court has personal jurisdiction over United under the Montreal Convention, *see* Dkt. 10.  But as United notes in its motion to dismiss, courts generally hold that the Montreal Convention provides a basis for subject matter jurisdiction, not personal jurisdiction. *See* Motion at 14-16; *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16 Civ. 9791 (NRB), 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018) (noting that courts "have consistently concluded that the Montreal Convention affords subject matter jurisdiction, *not* personal jurisdiction").  Plaintiffs did not pursue this argument further in their opposition to United's motion to dismiss and instead rely solely on New York's long-arm statute.

from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (internal quotation marks omitted). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).

With regard to the first component, courts to look at the "totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that constitutes purposeful activity." *Best Van Lines, Inc v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (alterations, internal quotation marks, and citations omitted). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (internal quotation marks omitted).

With regard to the second requirement, courts consider the degree to which there exists an "articulable nexus, or substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc*, 490 F.3d at 246 (internal quotation marks omitted). There does not need to be a "causal link between the defendant's New York business activity and a plaintiff's injury." *Licci ex rel. Licci*, 732 F.3d at 168-69. Instead, there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). Therefore, "[i]n effect, the 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction." *Licci*, 20 N.Y.3d at 339-40.

**B. Lina's Injuries Did Not Arise Out of United's Contacts With New York**

Plaintiffs argue that United transacts business in New York because Newark Airport serves as United's "international 'hub' for passengers departing or returning to New York City," and because it "operates numerous daily flights to and from La Guardia Airport in Queens, New York and maintains offices in New York City." Opposition at 3. While United does not seriously dispute that it transacts business in New York, it argues that Lina's fall, which occurred in New Jersey, did not arise out of United's contacts with New York. *See* Motion at 10-12. Plaintiffs respond that their purchase of the plane tickets while in New York is sufficient to confer personal jurisdiction over United. Opposition at 4.[4]

Even assuming United transacts business in New York, Plaintiffs have not shown that the injury arose out of any such contacts, since purchasing a ticket in New York does not give rise to jurisdiction for a personal injury action for an incident that occurred outside of the state. The Second Circuit's decision in *Gelfand v. Tanner Motor Tours, LTD.,* 339 F.2d 317 (2d Cir. 1964), is instructive. There, the Second Circuit considered whether a plaintiff could sue a defendant in New York for injuries that occurred on a bus ride from Las Vegas, Nevada to Grand Canyon, Arizona. *Id.* at 318. The plaintiff argued that there was jurisdiction in New York because he purchased the ticket through a travel service in Long Island. *Id.* at 321. The Second Circuit disagreed, emphasizing that the "alleged negligence of defendants, the subsequent injury to plaintiffs, and every relevant occurrence connecting these two events, all took place three thousand miles from Long Island, New York." *Id.* at 321. Therefore, "[i]t cannot even be said that the duty

---

[4] Although Plaintiffs do not actually allege in their Complaint that they purchased their tickets in New York, nor have they submitted an affidavit or any other evidentiary support reflecting that they did, the Court assumes only for purposes of this Opinion and Order that Plaintiffs did in fact purchase their tickets in New York.

of due care owed by defendants to plaintiffs arose in New York, for that duty did not finally arise until plaintiffs boarded defendants' bus in Las Vegas." *Id.* at 321-22.

Courts in this Circuit have followed *Gelfand*'s lead to hold that a purchase of a travel ticket in New York, without more, does not confer personal jurisdiction in that state. *See, e.g.*, *Simmons v. Nat'l R.R. Pass. Corp.*, No. 19 Civ. 6986 (LGS), 2020 WL 2904847, at *3 (S.D.N.Y. June 3, 2020) ("[I]t is well-established that the purchase of a ticket in New York is not sufficient to confer personal jurisdiction where the alleged injury occurred elsewhere."); *Cordice v. LIAT Airlines*, No. 14 Civ. 2924 (RRM) (LB), 2015 WL 5579868, at *4 (E.D.N.Y. Sept. 22, 2015) ("The mere purchase of a ticket in New York is insufficient to establish personal jurisdiction based upon an injury that occurred elsewhere while travelling on that ticket."); *see also Rodriguez v. Circus Circus Casinos, Inc.*, No. 00 Civ. 6559 (GEL), 2001 WL 21244, at *3 (S.D.N.Y. Jan. 9, 2001) (finding that the plaintiff had not established an adequate nexus to support jurisdiction on the basis that the plaintiff "had made his hotel reservation over [the defendant's] website" in New York because "the personal injuries at the heart of this lawsuit arose, if at all, from the allegedly negligent conduct of the defendants in Nevada rather than from the making of a hotel reservation").

Thus, while Plaintiffs' ticket purchase may have been a but-for cause of the injury, that alone does not establish the requisite relatedness between the transaction and the cause of action. *See Simmons*, 2020 WL 2904847, at *3; *cf. Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005) (concluding that the plaintiff had "failed to establish a sufficient nexus between the purported transactions of business in New York and the negligence claim" based on the issuance of a driver's license in New York, because the plaintiffs' "cause of action arose out of defendant's allegedly negligent driving in New Jersey"). United's alleged duty and Lina's alleged injury do not "arise

7

from" the purchase, nor is there a "substantial relationship" between the injury and the ticket that would give rise to jurisdiction. *Licci*, 20 N.Y.3d at 333.

In arguing against dismissal, Plaintiffs point to two cases: *McLoughlin v. Commercial Airways (Pty) Ltd.*, 602 F. Supp. 29 (E.D.N.Y. 1985) and *Wurtenberger v. Cunard Line*, 370 F. Supp. 342 (S.D.N.Y. 1974). To the extent that those cases carry any persuasive weight, they are distinguishable.

In *McLoughlin*, the district court determined that a South African airline was subject to personal jurisdiction in New York for injuries on a flight from one South African city to another based, in part, on the fact the airline's agent sold the plaintiffs their tickets in New York. 602 F. Supp. at 31-32. *McLoughlin* is, at best, a minority view in this district. In fact, the Court is not aware of any cases, in the over thirty years since *McLoughlin* was decided, that have relied on *McLoughlin* for its personal jurisdictional analysis. Regardless, *McLoughlin* is distinguishable from the case at bar. The court in *McLoughlin* focused on the defendant's agent's "continuous and systematic course of activity over a period of 12 years to (i) solicit business for, (ii) book reservations with, (iii) accept and transmit cash payments for air transportation to, and (iv) distribute public information on behalf of" the defendant. *Id.* at 32. The court concluded that these contacts rendered the defendant subject to *general* jurisdiction in New York. *Id.* Only then did the court conclude, without significant explanation, that the defendant transacted business through its agent within the meaning of section 302(a)(1), and that the business was "reasonably related" to the cause of action. *Id.* By contrast, Plaintiffs here argue only that United uses Newark Airport as a "hub" for passengers travelling to New York City, and that "[i]n connection with ticketing services and services connected to its handling of flights from LaGuardia and other airports,

8

numerous employees of United are based in New York." Opposition at 3. They do not, however, argue that United's connections are so substantial as to give rise to general jurisdiction.

Nor is Plaintiffs' reliance on *Wurtenberger* helpful. In that case, the court assessed whether it had jurisdiction over a doctor for a medical malpractice claim based on his role as the doctor for a cruise line. 370 F. Supp. at 342. The court observed that the defendant was the ship's doctor when the cruise ship left New York Harbor for the Caribbean as well as when it returned, and that he "presumably continued to perform his duties while the ship was in New York Harbor." *Id.* at 344. In addition, while the defendant claimed to have treated the plaintiff only while outside the territorial waters of New York, the plaintiff maintained that "he remained under the care of [the defendant] and this treatment continued until he left the ship." *Id.* at 343. The court determined that the defendant therefore "purposefully availed himself 'of the privilege of conducting activities within the forum State.'" *Id.* at 344 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The court further concluded that the medical malpractice claims arose out of those business transactions because when the ship left, the defendant "in effect, held himself out as a qualified doctor who would treat any medical problems they might have on the cruise," and "it would seem likely that many of the people who decided to go on the cruise and cut themselves off, albeit temporarily, from all land based medical services, only agreed to do this because they knew that competent medical care was available." *Id.* at 345. To whatever extent *Wurtenberger* has persuasive weight outside of the medical malpractice context, it is distinguishable from the case here: Unlike in *Wurtenberger*, the flight upon which Plaintiffs travelled did not travel to or from New York. The flight departed from Athens, Greece and landed in New Jersey.

In sum, Plaintiffs' reliance on *McLoughlin* and *Wurtenberger* cannot overcome the weight of authority in this Circuit holding that purchasing a plane ticket is insufficient to confer jurisdiction in the forum.

## C. Plaintiffs' Request to Transfer

In the closing section of their memorandum opposing United's motion to dismiss, Plaintiffs argue that, should the Court find it does not have jurisdiction over United, it should *sua sponte* transfer this case to the District Court for New Jersey (Newark) pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Opposition at 5-6. If a case is filed "laying venue in the wrong division or district," as here, section 1406 provides that a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Generally, "the party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). The movant thus has the burden to establish that jurisdiction and venue are proper in the transferee court, *see Wohlbach v. Ziady*, No. 17 Civ. 5790 (ER), 2018 WL 3611928, at *4 (S.D.N.Y. July 27, 2018), and that a transfer would be in the interests of justice, *see French Transit, Ltd. v. Mod. Coupon Sys., Inc.*, 858 F. Supp. 22, 27 (S.D.N.Y. 1994) (outlining the factors courts in this District generally consider in assessing whether transfer would be in the interests of justice).

Section 1406 is designed to avoid "the injustice which ha[s] often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn," *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962), but is not meant to "reward plaintiffs for their lack of

diligence in choosing a proper forum," *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992). Compelling reasons for transfer can include, in some instances, a statute of limitations bar. *See, e.g.*, *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Given that the functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits, the transfer of this action, when the statute of limitations has run, is in the interest of justice." (citation omitted)).

As an initial matter, Plaintiffs did not actually move for a transfer and have only suggested—for the first time in their opposition to United's motion to dismiss—that the Court transfer this case *sua sponte*. Reply at 6; *see* Local Rule 7.1(a) (requiring that all motions contain a notice of motion, a memorandum of law, and any supporting affidavits and exhibits); *see also Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 301 (S.D.N.Y. 2020) (denying a transfer where the plaintiff did not "float the idea of a transfer" until "a two-paragraph-long coda in their opposition to [the defendant's] motion to dismiss for lack of jurisdiction"). In support of their request, Plaintiffs say nothing about the threshold issues of jurisdiction and venue. *See* Opposition at 5-6. Plaintiffs do not even address whether the Court has the ability to sever this case against United and transfer those claims to New Jersey, given that the other Defendant in this case, the Port Authority, has not moved to dismiss. Nor do they address the possibility or the practical implications of pursuing two lawsuits in two forums based on the same incident.

Plaintiffs also have not identified any prejudice that would result from dismissing United without prejudice, such as a statute of limitations bar. And dismissal, rather than transfer, would avoid complicated issues that could result if the transferee court determines that it lacks subject matter jurisdiction. *See DeJoseph v. Cont'l Airlines, Inc.*, 18 F. Supp. 3d 595, 604 (D.N.J. 2014) (determining that the Montreal Convention does not provide for subject matter jurisdiction); *Fouad*

11

*v. Milton Hershey Sch. & Sch. Tr.*, No. 20 Civ. 10042 (PAC), 2021 WL 839453, at *1 (S.D.N.Y. Mar. 5, 2021) (remanding case back to state court after confronting the question of "whether, where a transferor court determines that subject matter jurisdiction exists, denies remand, and instead transfers the case; and the transferee court subsequently revisits the jurisdictional determination, concludes that there is no subject matter jurisdiction, and remands the case to state court in the transferor's district, a subsequent removal to the transferor court, on the same grounds as the first removal, is barred under 28 U.S.C. § 1447(d) because it would require the transferor to review the transferee's remand order").

It is on Plaintiffs to diligently choose a proper forum, and they have failed to do so in this case. The Court concludes that a transfer would not be in the interests of justice and therefore will not exercise its discretion to *sua sponte* transfer this case.

## IV. Conclusion

For the foregoing reasons, the Court grants United's motion to dismiss. Plaintiffs must file a letter within two weeks of the date of this Opinion and Order advising the Court whether they intend to continue pursuing this case against the Port Authority in this District. Upon receipt of this letter, the Court will schedule a case management conference, if necessary.

The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 13.

SO ORDERED.

Dated: June 14, 2021
      New York, New York                                     JOHN P. CRONAN
                                                          United States District Judge